IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH C. NAGY, | ) | CASE NO. 1:12 CV 825 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Joseph C. Nagy, for disability insurance benefits ("DIB") and supplemental security income ("SSI").

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Nagy had severe impairments consisting of status post stroke, Raynaud's phenomenon, degenerative disc disease, and personality disorder.[1] The ALJ determined that Nagy did not have an impairment or combination of impairments that meets or medically equals one listed in Appendix 1 to the regulations.[2] The ALJ made the following finding regarding Nagy's residual functional capacity:

---

[1] Transcript ("Tr.") at 16.

[2] *Id.*

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs. He can only occasionally stoop, kneel, crouch or crawl. He must avoid work environments with extreme cold and hazards such as dangerous machinery and unprotected heights. He can only perform simple, repetitive tasks but not in a fast paced production environment such as an assembly line. He can only interact superficially with co-workers and the public throughout the workday. He needs oral instructions for new tasks that he needs to perform on the job.[3]

Given that residual functional capacity, the ALJ decided that Nagy could not perform his past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Nagy could perform.[5] The ALJ, therefore, found Nagy not under a disability.[6]

Nagy asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Nagy presents five issues for decision on judicial review:

(1)     The ALJ found Nagy not disabled for purposes of his DIB claim and his claims for SSI. With respect to the latter, the ALJ implicitly approved of the administrative action taken by the state agency to reopen the grants of SSI applications filed in the 1990s and to deny

---

[3] *Id.* at 19.

[4] *Id.* at 22.

[5] *Id.* at 23.

[6] *Id.*

those applications. The ALJ did not, however, make express findings that the state agency properly determined that Nagy secured the granting of those applications by fraud. Did the ALJ err in his treatment of the action taken by the state agency on the 1990 applications?

(2)    The ALJ found that Nagy did not meet the listing for mental retardation in § 12.05C. Does substantial evidence support that finding?

(3)    The ALJ found that Nagy had limited education but was not illiterate. Does substantial evidence support that finding?

(4)    The ALJ did not assign specific weight to the opinions of any of the medical sources. None of these sources were treating physicians. Did the ALJ properly conduct analysis of the medical sources who provided RFC opinions about Nagy?

(5)    Nagy offered school records showing an IQ score of 64 in 1972 for the first time to the Appeals Council. The Appeals Council refused to remand on the basis of that record. Is the school record new and material evidence that requires a remand?

For the reasons fully set forth below, the Court recommends that the case be remanded for an ALJ's further review of the administrative action reopening and revising the decisions on the earlier SSI applications and for reconsideration of the findings made by the ALJ here consistent with this report.

## Analysis

**1.    Procedural posture**

This is a complicated case involving multiple SSI applications filed in the 1990s and a DIB application filed in 2002.

The ALJ properly observed that Nagy initially applied for SSI payments in 1993 and was found disabled as of August 1, 1993, as having met the listing for mental retardation.[7] Thereafter, Nagy performed some work that constituted substantial gainful activity, and his SSI benefits were terminated.[8] He stopped working, reapplied for benefits, and was again determined disabled as of June 30, 1998.[9]

In December of 2002, Nagy filed an application for DIB.[10] In the decision under review, the ALJ then describes an investigation and the reopening of the decisions on the 1993 and 1998 applications based on fraud and similar fault:

> His [Nagy's] claim was referred to the Cooperative Disability Investigation Unit. After an investigation, it was determined that the 1993 decision and the 1998 applications would be reopened based on fraud and similar fault. A determination can be reopened at any time if it was obtained by fraud or similar fault.[11]

The decision currently under review does not recite what action, if any, was taken after the reopening of the earlier applications or address in any way a finding of fraud or similar fault. At the end of the decision, the ALJ references the 2002 DIB application and the 1998 SSI

---

[7] *Id.* at 13.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* (internal citations omitted).

-4-

application and concludes that Nagy is not disabled for purposes of either of those applications.[12]

This case is much more complex than portrayed in the ALJ's decision. In an effort to make some sense of the administrative record in this case, I held an oral argument on May 6, 2013.[13] At one point in the hearing, counsel for the Commissioner, the Court, and counsel for Nagy conceded that they had never seen a case involving the reopening of a prior favorable decision in this posture.[14]

From my review of this administrative record, the following is a fair summary of the sequence of events:

- After Nagy filed the application for DIB in 2002, the Ohio Bureau of Disability Determination referred the application to the Social Security Administration's ("SSA") Cooperative Disability Investigation Unit ("CDIU") for suspected fraud.[15]

- The CDIU undertook an investigation and prepared a report.[16] The CDIU report was signed on October 31, 2005.[17]

---

[12] *Id.* at 24.

[13] ECF # 26, Transcript of the hearing of May 6, 2013 ("5/6/13 Tr.").

[14] *Id.* at 28-31.

[15] Tr. at 226-27.

[16] *Id.* at 234-41.

[17] *Id.* at 241.

- In November of 2005, the state agency apparently decided to reopen both the favorable 1993 and 1998 SSI decisions and to deny those applications for fraud or similar fault.[18]

- The administrative record does not contain a notice to Nagy or his counsel of the state agency's adverse action in reopening and denying the SSI claims. At the hearing before me, however, counsel for Nagy and the Commissioner agreed that documentation of the service or receipt of the state agency's decision does not appear in the administrative record.[19]

- The administrative record does contain a disability hearing officer's decision of December 12, 2007, referencing and affirming the determination to reopen and revise the original decisions of 1993 and 1998.[20]

- On December 26, 2007, SSA sent Nagy a notice of reconsideration.[21] This notice states that, "the previous determination denying your claim was proper under law" and "[t]he determination of your claim was made by an agency of the State."[22] The notice does not further discuss the basis of the "determination" and makes no mention of a finding of fraud.[23] The notice does discuss the right to request a hearing before an

---

[18] *Id.* at 231-33.

[19] 5/6/13 Tr. at 19.

[20] Tr. at 84-93.

[21] *Id.* at 81-83.

[22] *Id.* at 81.

[23] *Id.*

administrative law judge.[24] The notice does not include as an enclosure the disability hearing officer's decision.[25]

• As noted in the ALJ's decision, Nagy requested and received a hearing before the ALJ.[26] That hearing was commenced on April 14, 2009.[27] A copy of the transcript of that hearing does not appear in the administrative record. In a letter to the Appeals Council, the attorney for Nagy requested a recording of the April 14, 2009, hearing.[28] Apparently, that request did not result in a transcript of that hearing being added to the record.

• After the hearing before the ALJ, counsel for Nagy submitted a brief arguing that Nagy was not guilty of fraud.[29]

• As previously noted, despite the decisions of the state agency and SSA reopening and denying the 1993 and 1998 applications based on fraud and similar fault, the ALJ's decision on review merely notes the reopening[30] and makes no finding regarding fraud despite Nagy's counsel's brief with argument to the contrary.[31]

---

[24] *Id.* at 82.

[25] *Id.* at 83. The only enclosure is SSA Pub. No. 70-10281, "Your Right To An Administrative Law Judge Hearing And Appeals Council Review Of Your Social Security Case." *See*, http://www.ssa.gov/appeals/odar_pubs/70-10281.html (last visited June 18, 2013). There is no mention in this publication of reopening of a prior favorable decision, with or without fraud.

[26] *Id.* at 13.

[27] *Id.*

[28] *Id.* at 630.

[29] *Id.* at 201-08.

[30] *Id.* at 13.

[31] As I observed at the hearing in this case, "reopen" means taking another look at a matter already decided. 5/6/13 Tr. at 13. But the state agency and SSA went further here, reversing the prior decisions awarding SSI. Although the ALJ references the reopening, he makes no mention of the adverse ruling on reopening. Tr. at 13.

-7-

2.    **The ALJ's handling of the reopening and revision of the awards on the 1993 and 1998 SSI applications by the state agency and SSA**

Based on my review of the administrative record, as detailed above, I have found multiple deficiencies in the handling of the reopening and revision of the awards on Nagy's 1993 and 1998 SSI applications:

- The lack of documentation in the administrative record of notice to Nagy of the state agency's decision to reopen and revise and of SSA's affirmance of that decision on reconsideration,

- The lack of documentation in the administrative record of notice that the ALJ would consider the issue of fraud or similar fault on the prior applications at his hearing,

- The ALJ's failure to note in his decision that the benefit awards on the earlier SSI applications not only had been reopened but revised to reverse those awards at the administrative level,

- The ALJ's failure to make any finding in his decision about fraud or similar fault on the earlier SSI applications, and

- The absence from the administrative record of the transcript of the hearing before the ALJ on April 14, 2009, despite Nagy's counsel's express request for that transcript.

The Commissioner does not deny these deficiencies. Rather, she argues that substantial evidence in the administrative record, as articulated by the ALJ, supports the finding that Nagy was not disabled for purposes of either the 1998 or the 2002 DIB application. The noted deficiencies, although patent, constitute harmless error, according to the Commissioner.[32]

---

[32] 5/6/13 Tr. at 13, 14-15.

In their arguments, counsel have referred me to regulations,[33] a Social Security Ruling,[34] and HALLEX sections.[35] Most of the requirements of these administrative procedure sources apply to situations where the ALJ considers reopening at the hearing level. To the extent applicable to review of a decision to reopen and revise made by the state agency and affirmed by SSA, some requirements stand out:

- The notice of the hearing before the ALJ should contain the statement that the ALJ will determine whether a prior favorable determination or decision should have been reopened or revised because of fraud or similar fault.[36]

- The ALJ should discuss the evidence of fraud or similar fault and provide a rationale for sustaining that finding, if appropriate.[37]

By submitting a brief after the hearing arguing that the prior benefit awards were not obtained through fraud or similar fault, Nagy and his counsel obviously became aware of the adverse administrative action on the 1993 and 1998 applications while the case pended before the ALJ. Nevertheless, without the transcript of the April 14, 2009, hearing, it is not possible to review whether Nagy had a full and fair opportunity to challenge that

---

[33] 20 C.F.R. §§ 416.1487-416.1494.

[34] Social Security Ruling 00-2p: Titles II and XVI: Evaluation of Claims Involving the Issue of "Similar Fault" in the Providing of Evidence, http://www.ssa.gov/OP_Home/rulings/oasi/33/SSR2000-02-oasi-33.html (published Feb. 25, 2000) (site last visited June 19, 2013).

[35] HALLEX I-2-9-65, http://www.ssa.gov/OP_Home/hallex/I-02/I-2-9-65.html; HALLEX I-5-1-15, http://www.ssa.gov/OP_Home/hallex/I-05/I-5-1-15.html (sites last visited June 19, 2013).

[36] HALLEX I-2-9-65E.

[37] HALLEX I-2-9-65F.

administrative action. The transcript of the continued hearing on May 19, 2010, merely contains the testimony of a medical expert and a vocational expert. Also problematic is the fact that the administrative record on file with the Court contains only a partial transcript of the continued hearing on May 19, 2010.[38] According to the cover sheet,[39] the transcript consists of 37 pages. The record on file with the Court has only 18. The portion of the transcript on file with the Court makes no reference whatsoever to the issue of fraud or similar fault. And the ALJ made no findings as to that issue in his decision.[40] The ALJ's decision, therefore, contains no expressed affirmance of the administrative action on the grounds of fraud or similar fault.

Although not on all fours here, the Sixth Circuit has recently observed in the context of a reopening case that, "[w]hen presented with an application for benefits after a prior application has been denied, an ALJ must consider how the existence of a prior decision impacts a second application."[41] The court concluded, "[a] clear explanation allows the court to review the ALJ's decision effectively and meaningfully. A muddled approach can require the Commissioner, the claimant and the courts to expend time and resources attempting to

---

[38] Tr. at 639-56.

[39] *Id.* at 639.

[40] The ALJ's finding, based on the evidence of record, that Nagy was not disabled as of the onset date for the 1998 SSI application is not preclusive of the issue of whether a previous finding of disability by the Commissioner on that application was obtained by fraud or similar fault.

[41] *Gay v. Comm'r of Soc. Sec.*, No. 12-1653, 2013 WL 1316130, at *3 (6th Cir. Apr. 2, 2013).

figure out what the ALJ did."[42] On the record in this case, despite the expenditure of substantial time and resources, what the ALJ did cannot be figured out.

Under these circumstances, the case should be remanded for a proper hearing and findings on fraud or similar fault.

**3.     The ALJ's handling of the evaluation of Nagy's mental retardation under Listing § 12.05C**

There is also a potential problem with the ALJ's finding at step three regarding Listing § 12.05C. Both of the psychologists that examined and tested Nagy for IQ diagnosed him with mild mental retardation.[43] Both psychologists administered the WAIS-III and obtained test results meeting the listing requirement of Listing § 12.05C.[44] And there is no dispute that Nagy has other impairments "imposing additional and significant work-related limitations."[45] The test results obtained by Dr. Zeck in 1998 are substantially lower than those obtained by Dr. Davis in 1993.[46] Dr. Zeck expressed concern that Nagy had malingered and devoted insufficient effort to the test.[47] Dr. Davis did not question the validity of the test results.[48] Although the ALJ suggests that Nagy's performance in 1998 taints both tests, there appears

---

[42] *Id.*, at *4.

[43] Tr. at 599-600 (Dr. Zeck); 623 (Dr. Davis).

[44] *Id.*

[45] 5/6/13 Tr. at 32.

[46] Tr. at 599-600, 623.

[47] *Id.* at 599-600.

[48] *Id.* at 623.

-11-

to be no basis for that conclusion. A more reasonable explanation is that if Nagy did "tank" the 1998 test, the 1993 test more accurately reflects his true IQ, which nevertheless meets the listing requirement.

The ALJ appears to rely upon Nagy's limited employment as a truck driver and non-work activities as evidence that Nagy did not meet the § 12.05C listing requirements.[49] But, as the Sixth Circuit observed in *Brown v. Secretary of Health and Human Services*,[50] such evidence does not necessarily overcome the empirical evidence provided by the IQ test scores.[51] Further, the facts related to Nagy's non-work activities will be at issue in the evaluation of the fraud and similar fault administrative finding on remand.

Finally, the school IQ results submitted to the Appeals Council do not justify a remand. Those results existed at the time of the ALJ's decision, and Nagy offers no explanation for not presenting those results to the ALJ other than counsel did not have the results at the time of the hearing.[52] That explanation satisfies neither the "new" or "good

---

[49] *Id.* at 18.

[50] *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268 (6th Cir. 1991).

[51] *Id.* at 270. *Also*, *Hutson v. Astrue*, No. 1:11-CV-302-CWD, 2012 WL 4139049, at *5 (D. Idaho Sept. 19, 2012). This will become particularly important if the ALJ finds on remand that the awards on the earlier applications were not obtained by fraud or similar fault. Those awards were made on the ground that Nagy met the listing for mental retardation. Tr. at 13.

[52] 5/6/13 Tr. at 3-4.

-12-

cause" requirements for remand based on evidence not presented to the ALJ but presented for the first time to the Appeals Council.[53]

In summary, on remand the ALJ should reconsider the finding as to Listing § 12.05C, but the school IQ test results should not be included in that reconsideration.

## Conclusion

Based on the foregoing analysis, I recommend that the decision of the Commissioner that Nagy is not disabled for purposes of his 1998 SSI applications and 2002 DIB application be reversed and that this case be remanded for reconsideration of the ALJ's findings consistent with this report.

As discussed above, the ALJ on remand should hear argument and receive evidence on the issue of fraud or similar fault on the 1993 and 1998 SSI applications. The findings at step three as to Listing § 12.05C should be reconsidered. Given the broad scope of this recommended remand, the ALJ should also consider Nagy's objections to the finding of "limited education," which potentially relates to the step three finding. Further, as a matter of completeness, the ALJ should discuss the relative weight assigned to the various medical sources.

Dated: June 20, 2013                          s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

---

[53] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 734 (N.D. Ohio 2005).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[54]

---

[54] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).